UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TRAVIS DELANY WILLIAMS,

                Plaintiff,

v.                                          Case No. 14-cv-1078-pp

DAVE STAUCHIE, M. ISAAC,
ALVIN BIRDICK, JANE DOE, Nurse,
JANE DOE, Health Care Administrator,
JANE DOE, Doctor, MILA SAUSAKA,
NURSE MEGAN, L. GRAY,
GUARD RAY, CORPORAL PARKER,
and NURSE NICOLE,

                Defendants.

## DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS (DKT. NO. 2) AND SCREENING PLAINTIFF'S COMPLAINT

The plaintiff, Travis Delany Williams, a state prisoner, filed a *pro se* complaint under 42 U.S.C. §1983, alleging that his civil rights were violated at the Kenosha County Jail in August 2014. This matter comes before the court on the plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) and for screening of the plaintiff's complaint.

### Plaintiff's Motion for Leave to Proceed *In Forma Pauperis*

The Prison Litigation Reform Act, 28 U.S.C. §1915, applies to this case because the plaintiff was incarcerated when he filed his complaint. The PLRA gives the court the ability to allow an incarcerated plaintiff to proceed without pre-paying the filing fee under certain conditions. In this case, the plaintiff filed

1

the required Prisoner's Petition and Affidavit to Proceed Without Prepayment of Fees and/or Costs. That affidavit indicates that the plaintiff has no money and no assets, and that he has filed two previous federal court actions in which the courts allowed him to proceed *in forma pauperis*. The court concludes that the plaintiff lacks the funds to pay an initial partial filing fee. 28 U.S.C. § 1915(b)(4). Accordingly, the court will grant the plaintiff's motion for leave to proceed without pre-paying the filing fee, and will allow the plaintiff to pay the balance of the $350.00 filing fee over time from his prisoner account, as described at the end of this order.

## Review of the Plaintiff's Complaint

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss part, or all, of a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez,* 504 U.S. 25, 31 (1992); *Neitzke v. Williams,* 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink,* 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke,* 490 U.S. at 327. "Malicious,"

2

although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts follow the principles set forth in *Twombly*. First, they must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. A plaintiff must support legal conclusions

3

with factual allegations. *Id.* Second, if there are well-pleaded factual allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that the defendants: 1) deprived of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. *Buchanan-Moore v. County of Milwaukee,* 570 F.3d 824, 827 (7th Cir. 2009) (citing Kram*er v. Village of North Fond du Lac,* 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo,* 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).

In this case, the complaint alleges that on August 18, 2014, the plaintiff was transported from the Racine County Jail to the Kenosha County Jail for an August 19, 2014 court appearance. The Kenosha County Jail staff placed him in a wheelchair, then placed him in a holding cell. Later, when he was answering booking questions, someone asked him why he needed a wheelchair; the plaintiff responded that he needed surgeries and knee braces, a fact that he believed the jail should already have had documented, given his prior stays there.

The first count of the complaint then details a conversation between the plaintiff and defendant Dave Stauchie about the plaintiff's health—the fact that he'd been wearing knee braces and ACE bandages to support his knees, as well

4

as the state of the plaintiff's mobility, in terms of where he should be placed in the jail. The upshot appears to have been that, in order for the plaintiff to be placed in a room very near the toilet, defendant Stauchie told the plaintiff that he'd have to give up his ACE bandages. The plaintiff alleges that Stauchie told him he'd get the bandages back, but that he did not. The plaintiff goes into detail about defendant Stauchie telling medical personnel that the plaintiff didn't need the bandages and that there was nothing wrong with his legs.

In the second count, the plaintiff describes a course of conduct by defendant M. Isaac that included Isaac acting like the plaintiff was bothering him when the plaintiff asked for bedding, demanding that the plaintiff give up his wheelchair, calling the plaintiff a liar, slamming the cell door, speaking disrespectfully to the plaintiff, returning the chair but cuffing the plaintiff tightly to it and running the plaintiff's legs and knees into things while pushing him. The plaintiff alleges that when they arrived at the plaintiff's new cell, Isaac snatched the plaintiff out of the chair, threw him on the floor inside the cell and sat on the plaintiff as he pointed his red can of o.c. spray at the plaintiff's face and called the plaintiff a bitch. Stauchie then patted Isaac on the back, and they took the plaintiff's cuffs off.

The plaintiff asserts that the inmates in the cell block became so enraged that they immediately started kicking and banging on their doors to get the attention of higher ranking jail guards and medical staff. When this failed, inmates started flooding their cells, but that did not bring help either.

5

In his third count, the plaintiff claims that defendant Alvin Birdick came to the plaintiff's cell door and asked if the water was coming from the plaintiff's cell. The plaintiff said no, but he asked to see a nurse or a doctor and someone in authority because an officer just tried to break his legs and knee caps. Birdick said, "no one gives a fuck," then he went and got a squeegee and started pushing water into the plaintiff's cell. Birdick also told the plaintiff, "I hope you die in that cell asshole." In this count, the plaintiff also alleges that he asked Birdick, Gray, Ray, Nurse Megan and Stauchie for medical attention and dry clothing; they all denied his requests.

In the fourth count, the plaintiff alleges that on August 19, 2014—the day after he was brought to the jail—he spoke with Nurse Jane Doe and told her of his injuries. He alleges that Nurse Doe told him there was nothing she could do, and that he'd have to fill out a call slip. He alleges that Nurse Mila Sausaka later came through the cell block with a doctor, but that he was ignored.

In this same count, the plaintiff also alleges that after his August 19 court appearance, he informed several guards that when defendants Isaac and Ray came to take him to the deputies who would transport him to the Racine County Jail, they handcuffed the plaintiff extra tightly, and Isaac rolled up the plaintiff's bedding and threw it in his face. On the way to meet the deputies, Isaac again pushed the plaintiff's wheelchair, and ran his legs into the wall. The plaintiff alleges that Isaac lied to Ray, saying that the plaintiff tried to spit on him. Ray tried to find a spit mask, but he could not find one. Then he

6

noticed Isaac was lying and told Isaac to stop and to just wheel the plaintiff up front.

Finally, the plaintiff alleges that Isaac lied to the transporting deputies and told them the plaintiff did not have any ace bandages, but the deputy called the medical unit once they were in the sally port and medical said they would send them to the plaintiff if they found them. The plaintiff ended up being treated for his injuries at the Racine County Jail two days later.

Although the plaintiff named each defendant in both his or her individual and official capacity, the complaint lays out only facts relating to individual conduct of the defendants in their individual capacities. The plaintiff has not alleged any facts that might prove some official policy or custom that caused a constitutional violation—facts he would have to demonstrate if he were suing the defendants in their official capacities. *See, e.g., Potochney v. Doe*, ___ F.Supp.2d ___, 2002 WL 31628214 at *3 (N.D. Ill. Nov. 21, 2001); *Petty v. County of Franklin, Ohio*, 478 F.3d 341, 349 (6th Cir. 2007). Because the plaintiff has alleged facts that support only claims against the defendants in their individual capacities, those are the only claims the court will consider.

Reviewing the facts alleged in the complaint, it appears to the court that the plaintiff is alleging two kinds of constitutional violations. First, he appears to be alleging that defendants Dave Stauchie and M. Isaac subjected him to excessive force, in violation of the Fourth Amendment's prohibition against unreasonable seizures. He also appears to be alleging that those two defendants were deliberately indifferent to the plaintiff's serious medical needs,

7

in violation of either the Eighth Amendment's prohibition against cruel and unusual punishment or the Fourteenth Amendment's due process clause (depending on whether he was a convicted prisoner or a pretrial detainee at the time these events occurred). The plaintiff also appears to be alleging that defendants Birdick, Gray, Ray, and Nurse Megan were deliberately indifferent to his serious medical needs, when they refused to seek medical care for him when he asked them for help. The court finds that the complaint alleges sufficient facts to allow the plaintiff to proceed on these claims, against these defendants.

The court will dismiss the plaintiff's claim against the remaining defendants. The plaintiff alleges that the Nurse Jane Doe he saw at 5:00 a.m. on August 19, 2014 was, the court assumes, deliberately indifferent to his serious medical needs. But Nurse Doe simply told him to fill out a sick call slip; a medical professional is not deliberately indifferent solely because she requires an inmate to follow procedure. The plaintiff also asserts claims against Nurse Mila Sausaka and Doctor Jane Doe, who conducted rounds on the cell block later that day. The plaintiff alleges that these defendants ignored him, but he doesn't allege that they knew he needed medical assistance and refused to help him. Finally, nowhere in the complaint does the plaintiff mention Healthcare Administrator Jane Doe, Corporal Parker, or Nurse Nicole; he provides no facts indicating that these people did anything on the days in question. For these reasons, the court will dismiss these defendants.

The court notes that the defendant has not fully identified some of the defendants against which the court is going to allow him to proceed—he has provided, for example, only the first initial for defendant Isaac, not that person's full first name. After the defendants answer or otherwise respond to the complaint, the court will set deadlines for, among other things, conducting discovery. The plaintiff must use the discovery process to fully identify those defendants for whom he has provided only partial identification information.

## Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 2).

The court **DISMISSES** the following defendants: Nurse Jane Doe, Healthcare Administrator Jane Doe, Corporal Parker, and Nurse Nicole.

The court **ORDERS** that the United States Marshal shall serve a copy of the complaint and this order upon the following defendants pursuant to Federal Rule of Civil Procedure 4: Dave Stauchie, M. Isaac, Alvin Birdick, Nurse Megan, L. Gray, and Ray. The court advises the plaintiff that Congress requires the U.S. Marshal Service to charge for making or attempting such service. 28 U.S.C. §1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). Although Congress requires the court to order service by the U.S. Marshal Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshal Service.

9

Case 2:14-cv-01078-PP   Filed 06/04/15   Page 9 of 11   Document 13

The court also **ORDERS** that the defendants who receive service of the complaint shall answer or otherwise respond to the complaint, pursuant to Fed. R. Civ. P. 12.

The court **ORDERS** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prison trust account the $350.00 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The Secretary must clearly identify those payments by the case name and number assigned to this case.

The court further **ORDERS** that the plaintiff shall submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter. Because each filing will be electronically scanned and entered on the docket upon receipt by the clerk, the plaintiff does not need to mail copies to the defendants. All defendants will be served electronically through the court's electronic case

filing system. The plaintiff should retain a personal copy of each document filed with the court.

The court further advises the plaintiff that if he does not timely file required submissions, the court may dismiss his case for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

The court will mail a copy of this order to the warden of the institution where the plaintiff currently resides.

Dated at Milwaukee this 4th day of June, 2015.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**