## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**TRAVIS DELANEY WILLIAMS**,

Plaintiff,

v.                                  **Case No. 14-cv-1078-pp**

**DAVE STAUCHIE, MR. ISAAC,
ALVIN BIRDICK, MEGAN KEEFER,
L. GRAY, and GUARD RAY,**

Defendants.

---

## DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION (DKT. NO. 23), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTIONS TO APPOINT COUNSEL (DKT. NOS. 25, 75), GRANTING PLAINTIFF'S MOTION TO DISMISS DEFENDANT LASHONDA GRAY (DKT. NO. 26), DENYING DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO PROSECUTE (DKT. NO. 38), GRANTING DEFENDANT'S MOTION TO COMPEL PLAINTIFF TO AUTHORIZE RELEASE OF RECORDS (DKT. NO. 38), DIRECTING PLAINTIFF TO AUTHORIZE RELEASE OF RECORDS ON OR BEFORE MONDAY, APRIL 11, 2016, DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. NO. 45), DENYING PLAINTIFF'S MOTION FOR APPROVED COURT SETTLEMENT PROPOSAL (DKT. NO. 45), DENYING PLAINTIFF'S MOTION FOR COURT ORDER TO OBTAIN VIDEO (DKT. NO. 45), DENYING PLAINTIFF'S MOTION FOR COURT ORDER (DKT. NO. 46), DENYING AS MOOT PLAINTIFF'S MOTION FOR COURT RULING (DKT. NO. 47), DENYING PLAINTIFF'S MOTION TO STRIKE MEGAN KEEFER'S SUMMARY JUDGMENT MOTION (DKT. NO. 53), GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE OVERSIZED MEMORANDUM (DKT. NO. 72), GRANTING PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO REPLY (DKT. NO. 72), DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 72), DENYING PLAINTIFF'S MOTION TO COMPEL DISCOVERY (DKT. NO. 77), AND DIRECTING PLAINTIFF TO FILE A RESPONSE TO THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON OR BEFORE MONDAY, MAY 16, 2016

---

Case 2:14-cv-01078-PP   Filed 03/14/16   Page 1 of 26   Document 78

In an order entered June 4, 2015, the court screened the plaintiff's complaint, and allowed him to proceed on claims against defendants Isaac, Ray, Stauchie, Birdick, Gray and Nurse Megan. Dkt. No. 13. In July 2015, the plaintiff filed three motions (a motion to reconsider, Dkt. No. 23; a motion to appoint counsel, Dkt. No. 25; and a motion to dismiss defendant Gray, Dkt. No. 26), as well as a response to the defendants' answer, Dkt. No. 24. Defendant Megan Keefer filed a motion to dismiss or compel in September 2015 (Dkt. No. 38). Then, in December 2015, things began to spiral out of control, in part because the court did not address the plaintiff's earlier motions as quickly as he would have liked. As a result, there are now many pending motions in this case, including motions for summary judgment filed by all the defendants. The court will address many of the pending motions in this order.

## I.     Plaintiff's Motion for Reconsideration (Dkt. No. 23)

On July 17, 2015, the plaintiff filed a motion asking the court to reconsider its dismissal of defendants Stauchie, M. Isaac, Alvin Birdick, Nurse Megan, and Guard Ray in their official capacities. Dkt. No. 23. The plaintiff further asked the court to reconsider its dismissal of Nurse Jane Doe, Doctor Jane Doe, Corporal Parker and Nurse Nicole. Id.

A motion for reconsideration serves a very limited purpose in federal civil litigation; it should be used only "to correct manifest errors of law or fact or to present newly discovered evidence." Rothwell Cotton Co. v. Rosenthal & Co., 827 F.2d 246, 251 (7th Cir. 1987) (quoting Keene Corp. v. Int'l Fid. Ins. Co., 561 F. Supp. 656, 665-66 (N.D. Ill. 1982), aff'd, 736 F.2d 388 (7th Cir. 1984)).

While it is true that under Federal Rule of Civil Procedure 54(b), any non-final decision or order is subject to revision at any time before the entry of judgment, such revisions are discouraged. Further, while a court has the power to revisit prior decisions of its own, "as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988) (quoting Arizona v. California, 460 U.S. 605, 618 n.8 (1983)). In general, "litigants must fight an uphill battle in order to prevail on a motion for reconsideration." United Air Lines, Inc. v. ALG, Inc., 916 F. Supp. 793, 795 (N.D. Ill. 1996).

In his motion to reconsider, the plaintiff first asserts that all of the defendants had an official duty to protect the plaintiff and follow the rules, policies and procedures of the Kenosha County Jail ("Jail"), and therefore that he should be able to proceed against them in their official capacities. Dkt. No. 23 at 1. The plaintiff misunderstands the difference between individual and official capacity claims.

The plaintiff has claimed that the defendants not only violated Jail policies, but violated plaintiff's constitutional rights as a result their violations of Jail policy. Section 1983 allows a plaintiff to sue "persons" who violated the plaintiff's constitutional rights, so these claims are claims against each defendant in his or her individual capacity.

A claim against a defendant in his or her official capacity is the equivalent of a claim against the county. In order to prove such a claim, the

3

plaintiff would have had to allege that Kenosha County has a policy, custom, or practice that, when the defendants followed it, violated the plaintiff's constitutional rights. The plaintiff did not make those allegations in his complaint. Thus, he did not articulate facts that supported a claim against the defendants in their official capacities.

Next, the plaintiff asks the court to reconsider its dismissal of Nurse Jane Doe, who brought the plaintiff medication at his cell at 5:00 a.m. and told him to fill out a sick call slip. The plaintiff now says in his motion to reconsider that he told Nurse Jane Doe about his injuries and that she ignored blood on his skin and abrasions, which she could see. Id. at 4. The plaintiff did not make these allegations in his complaint (which he filed some seventeen months ago). Even if he had raised these allegations in the complaint, the plaintiff's own allegations demonstrate that the reason Nurse Jane Doe was at the plaintiff's cell was to pass out medication, but that she went above and beyond that duty when she told the plaintiff to submit a sick call slip to request medical attention. Even if the plaintiff had alleged that Nurse Jane Doe knew of his injuries and the blood and abrasions, she was not deliberately indifferent—she took action. She told the plaintiff to seek medical attention by submitting a sick call slip.

The plaintiff goes on to say that there is no difference in the allegations he made against Nurse Jane Doe, Doctor Jane Doe and Nurse Mila Sausaka (whom the court dismissed as defendants), and Nurse Megan (against whom the court allowed the plaintiff to proceed). Id. According to the plaintiff, Nurse

Jane Doe and Nurse Megan were the only ones who were at his cell door to hear his complaints and who could see the damage done by M. Isaac. Id. at 4-5. The plaintiff also asserts that Doctor Jane Doe and Mila Sausaka "stood less than 2 feet away" from the plaintiff and heard him say "I am injured" and "I need medical help." Id. at 5. The plaintiff asserts that they looked him in the eyes and continued to talk to the inmate across from the plaintiff, and that they charted the other inmate's complaints and looked at the plaintiff periodically as the plaintiff hit the door. Id. He alleges that they then walked off, leaving the plaintiff in physical and emotional pain. Id. This information was not in the plaintiff's original complaint, so even if it did support a deliberate indifference claim, the court will not reverse its decision to dismiss defendants Nurse Jane Doe, Doctor Jane Doe and Nurse Mila Sausaka at screening.

Finally, the court dismissed Nurse Nicole and Corporal Parker because neither was mentioned in the plaintiff's complaint. Now the plaintiff submits that Parker is a supervisor and has a duty to enforce Jail policy, customs, procedures, and rules. Even if that information had been in the plaintiff's complaint, the court would have dismissed Parker because §1983 makes public employees liable "for their own misdeeds but not for anyone else's." Burks v. Raemisch, 555 F.3d 592, 596 (7th Cir. 2009); see also George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007). The plaintiff cannot proceed on a claim against Parker simply because he is a supervisor.

With regard to Nurse Nicole, the plaintiff says that he just discovered that Nurse Nicole told intake staff at the Jail in August that the plaintiff did not need a wheelchair. Dkt. No. 23 at 5. The plaintiff says that Nurse Nicole breached a mandatory duty "by imposing her personal opinions out of retaliation." Id. This allegation does not state a claim for deliberate indifference or for retaliation. Simply telling intake staff that the plaintiff did not need a wheelchair does not constitute deliberate indifference to a serious medical need, and the plaintiff has not alleged that he had been involved in some protected First Amendment activity which caused Nurse Nicole to retaliate against him.

At the conclusion of his motion, the plaintiff asks the court to allow the plaintiff to amend his complaint after full discovery. This is not a proper motion to amend the complaint, and the court will not grant blanket approval for the plaintiff to amend his complaint after discovery. If the plaintiff were to file a proper motion to amend the complaint under Federal Rule of Civil Procedure 15(a) and Civil Local Rule 15, the court would consider it. The court notes, however, that if the plaintiff were to file such a motion "after full discovery," the court is likely to deny that motion because it would be prejudicial to the defendants to allow the plaintiff to add new claims or parties at that time.

## II.    Plaintiff's Motions to Appoint Counsel (Dkt. Nos. 25, 75)

On July 22, 2015, the plaintiff filed a motion to appoint counsel. Dkt. No. 25. In that motion, he argued that there is "an overall complexity to gathering all evidence to present this case," and suggests that he would be denied access

6

to legal documents, witnesses, video footage, and other critical evidence if he did not have counsel. Id. at 1. The plaintiff represented that he contacted several attorneys, all of whom declined to represent him. Id. The plaintiff also stated that his $100 legal loan was not sufficient to fund the prosecution of all seven cases that he had pending at that time in federal and state court. Id. at 2. He also submitted that he would not be able to get his medical records from the Racine County Jail unless he could go get them himself. Id. The plaintiff asserted that the denial of the motion to appoint counsel would result in his inability to litigate this case. Id. at 4.

On February 22, 2016, the plaintiff filed another motion for appointment of counsel. Dkt. No. 75. In this second motion, he argued that he could not afford counsel, that the issues in this case were complex, and that he was confined to his unit most of the time, could not access the law library, and was not allowed to order any case law from the computer. Id. at 1. The plaintiff stated that he had written numerous letters to attorneys over the last two years, and that none of them had agreed to take on any of the plaintiff's four cases pending before this court. Id. The plaintiff stated that he had no knowledge of the law, had a sixth grade education, and was not capable of litigating his four federal cases. Id. Further, the plaintiff stated that he had a broken hand, and was being retaliated against by staff at his current institution who did not allow the plaintiff to have a wheelchair, which would allow him to visit the law library and to conduct other activities at the prison. Id. at 1-2.

7

The plaintiff has argued that his ability to conduct discovery and gather evidence has been limited by his incarceration. For example, he says he that he received copies of videos on CD, but that those have been confiscated. Dkt. No. 76 at 1. The plaintiff says that he has been told he cannot view the CDs and that he either needs to send them back at his expense or have them destroyed. Id. The plaintiff also says that he cannot contact critical witnesses because some of the witnesses are also in the prison system, and the plaintiff has no way of contacting them or deposing them to elicit statements. Id.

In a civil case, the court has discretion to decide whether to recruit a lawyer for someone who cannot afford one. 28 U.S.C § 1915(e)(1); Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). First, however, the person has to make a reasonable effort to hire private counsel on their own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007). In this case, the court concludes that the plaintiff has done so. As a result, the court next must decide "whether the difficulty of the case – factually and legally – exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). To decide that, the court looks, not only at the plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id.

This court must limit its inquiry to whether this plaintiff is competent to litigate this particular case, which involves claims regarding the way he was

treated and the way his medical needs were addressed during his time at the Kenosha County Jail in August 2014.

Although the plaintiff complains about an injured hand that makes it extremely difficult to write, he has been able to file many handwritten documents in this case in the past few months, and the court has been able to read them without trouble.

The plaintiff also submits that since his psychotropic drugs were discontinued, he has been acting erratically and hearing voices. He says he has gone through four different cellmates since October. Dkt. No. 75 at 2. Despite these facts, the plaintiff has managed to file many very lucid, handwritten motions and other documents, not only in this case but in other cases he has pending before the court. For example, for his most recent motion to appoint counsel, he filed not only a motion, but also a detailed sworn declaration.

The court will deny the plaintiff's motions to appoint counsel. The plaintiff's litigation of this case and others continues to demonstrate that he is competent to represent himself.

Even the story the plaintiff tells regarding the video shows he was able to obtain the video through written discovery. The court is troubled to hear that the plaintiff is having difficulty retaining the video as evidence at his current institution. The court understands that the plaintiff may not be able to possess the CD in his cell, but he should be able to view it as needed (with appropriate restrictions) and he should not be forced to return or destroy it. The court will provide the plaintiff's current institution with a copy of this order.

### III. Plaintiff's Motion to Dismiss Defendant LaShonda Gray (Dkt. No. 26)

On July 24, 2015, the plaintiff filed a motion asking to dismiss one of the defendants he'd named, and against whom the court had allowed him to proceed—LaShonda Gray. Dkt. No. 26. The plaintiff's motion indicates that defendant Gray "just happen[ed] to show up," and that she was instructed by Alvin Birdick and Corporal Parker to shut off the water in the plaintiff's cell. Id. He concludes that defendant Gray was just following instructions, and therefore was not responsible for any decision to violate the plaintiff's constitutional rights. Id. The court will grant this motion, and will dismiss defendant Gray.

### IV. Defendant Megan Keefer's Motions (Dkt. No. 38)

On September 21, 2015, defendant Megan Keefer filed a motion to dismiss for failure to prosecute, or, alternatively, a motion to compel plaintiff to authorize release of records. Dkt. No. 38.

Keefer bases her motion on the plaintiff's refusal to sign an authorization for his records from the Racine County Jail. Dkt. No. 39 at 1-2. Keefer attached to her brief a copy of the letter the plaintiff sent in response to receiving the authorization form and the request to execute it. Dkt. No. 40-2. In this letter, the plaintiff states (emphasized by an obscenity) that the person who sent him the authorization needed "to either settle this case or wait on discovery." Id. at 1. The letter goes on to demand that Keefer also needed to settle another case the plaintiff had brought against her, and uses further obscenities to characterize the defendant's law firm. The plaintiff stated, "So please refrain

10

from sending me garbage in the United States mail," and completes the letter with further obscenities. Id. The plaintiff followed up this letter with a second one, apparently attempting to make a settlement offer. Dkt. No. 40-3. The tone of the letter is belligerent and hostile. The plaintiff states that counsel for the defendant can get the medical records "once the Judge orders discovery," and threatens that if the defendant waits until after discovery to "negotiate," "this deal is off the table." Id. at 2. The plaintiff insists that he is going to trial, and appears to attempt to persuade the defendant's counsel to settle by arguing that he can drive up the cost of the litigation. Id. He concludes by informing counsel that he will be on vacation between September and October of 2015. Id. at 3.

The plaintiff's behavior in response to receiving the authorization forms from the defendant's counsel is unacceptable and inexcusable. When a plaintiff seeks to use the federal court system to pursue his rights, he must follow the rules of that system, and must interact with opposing counsel in a civil manner. The defendant's counsel made a completely valid and acceptable request that the defendant sign the authorization forms. She was not required to wait for the court to order discovery; the Federal Rules of Civil Procedure authorize her to make such a request during the time period the court prescribes for conducting discovery. Even if counsel's request had not been authorized by the Federal Rules of Civil Procedure, the plaintiff's use of obscenities and threats and name-calling was unacceptable.

The court will not dismiss this case for failure to prosecute at this time, because arguably the plaintiff did not realize that the court could dismiss his case for failure to comply with valid and lawful discovery demands. See McInnis v. Duncan, 697 F.3d 661, 664 (7th Cir. 2012). The court will, however, warn the plaintiff now: if he fails to comply with valid discovery demands from the defendants, one of the sanctions the court has the authority to impose is dismissal of this case. Further, if the court learns that the plaintiff responds to *any* future correspondence or motions from *any* of the defendants with threats or obscenities, this court **will** consider imposing sanctions on the plaintiff.

The court will instruct Keefer to submit new authorizations to the plaintiff within seven (7) days of receipt of this order. The court **ORDERS** that the plaintiff must sign the authorizations, and return them to counsel for the defendant in time for counsel to receive them on or before **Monday, April 11, 2016**. If defendant Keefer does not receive the signed authorizations by that date, defendant Keefer shall promptly notify the court in writing. In that event, the court would entertain a motion to dismiss this case for failure to prosecute.

If the plaintiff provides the executed authorizations and Keefer obtains his medical records, Keefer shall advise the court within seven (7) days of receiving the records whether she would like to supplement her motion for summary judgment.

## V.  Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 45)

On December 3, 2015, the plaintiff filed a motion entitled, "Motion for Partial Summary Judgment, alternatively motion for approved court settlement

12

proposal." Dkt. No. 45. The clerk's office docketed this pleading as a motion for partial summary judgment, a motion for approved court settlement proposal, and a motion for court order to obtain video.

In the six-page motion, the plaintiff asks the court to grant him partial summary judgment on liability because a Racine County sick call request slip says that the plaintiff was treated for injuries he received at the Kenosha County Jail. Dkt. No. 45 at 6. The portion of the motion that asks for summary judgment does not comply with Federal Rule of Civil Procedure 56 or Civil Local Rule 56; the plaintiff does not set forth any proposed findings of fact, and the only evidence he submits is an inmate request form that he filled out and submitted at the Racine County Jail six days after he returned from the Kenosha County Jail. Dkt. No. 45-1. That form does not prove that the defendants named in this lawsuit were deliberately indifferent as a matter of law. Indeed, the defendants filed a substantive response to this motion, Dkt. No. 50, and in that response, they identified genuine disputes between the parties as to material facts (whether the plaintiff was injured at the Racine County Jail and whether the plaintiff had a serious medical need at the time he interacted with defendant Keefer). Under Rule 56 and the case law that interprets that rule, if there is a genuine dispute as to a material fact, the court cannot grant summary judgment. The court will deny the portion of the plaintiff's motion that asks for partial summary judgment.

Based on his belief that he was entitled to summary judgment on liability, the plaintiff also asked the court to approve a settlement amount of

$25,000. Dkt. No. 45 at 10. The court does not order "settlement;" a "settlement" is a voluntary agreement between the parties. The plaintiff indicates that the "settlement" is "stipulated"—again, to "stipulate" means to agree. The plaintiff has not provided the court with a signed stipulation or a signed agreement indicating that any of the defendants have agreed to a $25,000 settlement, and thus, there is no "settlement" or "stipulation" for the court to approve. The court will deny this portion of the motion.

Finally, the plaintiff asks the court to issue an order allowing him to obtain video footage from the Kenosha County Jail from August 17, 2014 through August 20, 2014. Id. at 7. He believes it will show that the plaintiff sustained his injuries at the hand of M. Isaac, with the participation of each other defendant. It appears that the plaintiff is asking this court to compel the release of this video. Federal Rule of Civil Procedure 37(a) and Civil Local Rule 37 lay out the procedure for filing a motion to compel; the first step is that the party seeking to compel production must confer in good faith with the other side, and ask the other side to provide the requested item voluntarily. In this case, the plaintiff did not provide the court with a certification that he made a good faith attempt to confer with the defendants before filing this motion. The court will deny this portion of the motion. (The court notes that the plaintiff subsequently referenced a CD with videos that he received from the defendants, so this request also may be moot.)

## VI. Plaintiff's Motion for Court Order (Dkt. No. 46)

On December 7, 2015, the plaintiff filed a motion asking the court to issue a court order requiring the clerk of court to return to him an inmate trust account statement that he mailed to the court along with some other documents. Dkt. No. 46. According to the plaintiff, he sent the document to show the court that Dodge Correctional Institution and Columbia Correctional Institution had been deducting money from the plaintiff's inmate account and had not been sending that money to the clerk of court for the four filing fees the plaintiff owes. The plaintiff says he needs the document back to attach to a United States Department of Justice litigation and investigation complaint. Id. at 1.

The motion states that the plaintiff sent the trust account statement to the clerk of court "upon stipulation for the clerk to copy, stamp, & return the document to the plaintiff along with its response to the inquiry." Id. The plaintiff alleges that the clerk seized the documents, and sent response correspondence to the plaintiff that did not enclose plaintiff's documents, "which went against plaintiff's instructions." Id.

The plaintiff does not state when he sent the trust account statements. The court assumes, however, that he is referring to Dkt. No. 41. On October 7, 2015, the clerk's office received a letter from the plaintiff, asking what amount of money the clerk's office had received since September 11, 2014 for each of four cases (including this one). Id. at 1. The letter said that the plaintiff was asking "because money has been deducted from [his] prison account but [he

15

was] seeing the same amounts of money [he] still owe[d] originally!" Id. The plaintiff advised the clerk's office to "look at the enclosed trust fund transaction," which he "beg[ged]" the clerk to return to him with a response. Id. He alleged that it appeared that "for over a year DOC has been taking my money & going down the street to the Wisconsin Dells enjoying theirself at lunch time . . . ." Id. at 2. The plaintiff closed by stating, "Please return my Document with your office response." Id. On the trust account document itself, Dkt. No. 41-1, someone hand-wrote, "'Stamp Copy' Return My Original." Id.

The clerk's office sent the plaintiff a letter in response to this filing. Dkt. No. 41-2. The letter recounted for the plaintiff how much money it had received, and to which cases that money had been applied. It advised the plaintiff that it was the correctional institution's job (in this case, Columbia Correctional) to calculate the fee payments, and that the clerk's office could not "continually provide" him with updates about what payments had and had not been made. The letter suggested that the plaintiff pose any questions he might have about how the institution was calculating his payments to the institution. Id. The letter closed by stating, "Also, be advised that once a document is filed with the court it cannot be returned to you without an order from the court. You should keep a copy of all documents filed with the court." Id.

Again, the plaintiff misunderstands the word "stipulation." The plaintiff certainly demanded that the clerk's office send the trust account statement back to him, but the clerk's office did not "stipulate," or agree, to do so. In fact, the clerk's office advised the plaintiff of this court's policy regarding any

16

document that any party may file: once a party files a document with the court, the court will not return that document to a party without a court order. The court expects parties to keep copies of what they file with the court. Further, the simple fact that a party instructs the clerk's office, or the court, to do something does not mean that the clerk's office or the court will take that action. In order to assist in the smooth operation of the court, there are many policies which the judges have required the clerk's office to follow, or which the Administrative Office of United States Courts has required clerk's offices to follow. The clerk's office is bound by those policies, not by an individual litigant's instructions.

There are hundreds of cases filed in the Eastern District of Wisconsin each year—Judge Pepper alone has over 200 civil cases assigned to her. The clerk's office works very hard to stay on top of all of the motions, responses, replies, requests, letters and other documents that are filed with the court every day. The plaintiff has filed four different cases with this court, and has filed many documents in each of those cases. The clerk's office has done its usual hard work of trying to keep up with all those filings—and even to make sure that the right documents get filed under the right case number, despite the fact that the plaintiff does not always make clear what document goes in which case. Given the court's work load, and the clerk's office's case load, the court is reluctant to make exceptions to court policy for the plaintiff.

The court will, this one time, update the information it provided seven months ago regarding how much it has received against the plaintiff's filing fee,

17

and, as a courtesy, will order the clerk's office to send the plaintiff a copy of the trust account statement he provided last October. The court **ORDERS**, however, that from here forward, the plaintiff shall not demand that the clerk's office return documents to him. If the plaintiff wants a copy of something he files with this court, it is his responsibility to make that copy before he sends the document to the clerk's office. The clerk's office will not return copies of documents in the future.

In Case No. 14-cv-1078 (this case), the plaintiff has paid $19.10 toward his filing fee, and owes a balance of $330.90. In Case No. 14-cv-452, the plaintiff has paid $5.12 toward the filing fee, and owes a balance of $344.88. The court has received no payments toward the $350.00 he owes in Case No. 14-cv-792 or the $350.00 he owes in Case No. 14-cv-1594.

## VII. Plaintiff's Motion for Court Ruling (Dkt. No. 47)

Also on December 7, 2015, the plaintiff filed a motion for court ruling. Dkt. No. 47. In this motion, he asked the court to rule on pending motions, including his motion to reconsider (Dkt. No. 23), his responses to the defendants' answers (Dkt. Nos. 24, 35), his motion for appointment of counsel (Dkt. No. 25), his response motion to strike defendants' response motion in opposition to his motion for appointment of counsel (Dkt. No. 36), and his response to defendant Megan Keefer's motion to dismiss for failure to prosecute (Dkt. No. 42). The court will deny this motion as moot. Many of the documents he mentions do not actually constitute "motions" that require a court ruling (for example, his responses to the defendants' answer to the complaint; the

18

Federal Rules of Criminal Procedure do not give a plaintiff a right to "respond" to the answer to a complaint), and the court now is ruling on the actual "motions" that are pending (although it did not do so as quickly as the plaintiff would have liked).

## VIII. Plaintiff's Motion to Strike (Dkt. No. 53)

On December 14, 2015, defendant Megan Keefer filed a motion for summary judgment. Dkt. No. 48. In turn, on December 31, 2015, the plaintiff filed a motion asking the court to strike Megan Keefer's motion for summary judgment. Dkt. No. 53. In his motion to strike, the plaintiff asked the court to strike the motion for summary judgment, sanction and disbar the attorney for lying to the court in the pleadings, set the case for settlement arbitration, and set the case for trial. Id. at 1. In support of his motion, the plaintiff submitted a sworn declaration detailing his factual disputes with the motion for summary judgment. Id. at 2-3. He asserted that Keefer's attorney was wasting the court's time by filing this frivolous motion, and stated that the attorney should be cited and sanctioned for her violation of Wisconsin Supreme Court Rules. Id. While the language that he used in this motion was not as abusive as the language he used in responding to the defendant's request that he sign medical authorizations, the plaintiff's response nonetheless is confrontational, hostile and uncivil.

The Federal Rules of Civil Procedure—specifically, Rule 56—expressly allow a party to file a motion for summary judgment. The plaintiff filed one. Yet he demands that the court deny the defendant the opportunity to do the same.

The plaintiff alleges that defendant Keefer did not present any evidence in support of her motion for summary judgment; in fact, defendant Keefer supported her motion with an affidavit, which is evidence. If the plaintiff believes that there are, in the words of Rule 56, genuine disputes as to material facts, and that defendant Keefer is not entitled to judgment as a matter of law, then his remedy is to file a response to Keefer's motion for summary judgement. In that response, he can (civilly and politely) point out any facts that he believes are material and are in dispute, and he may present argument with regard to whether the defendant is entitled to a judgment as a matter of law.

The plaintiff's behavior toward the defendants, and their counsel, has been unacceptable. The court strongly cautions the plaintiff that if he continues to use obscenity, threats and personal attacks when communicating with defendant Keefer and her counsel (or any other defendant), or in the pleadings he files in this court, this court may consider sanctions against him—including the possible dismissal of this case.

IX.    **Plaintiff's Motions Regarding Summary Judgment (Dkt. No. 72)**

On January 4, 2016, the remaining defendants filed a motion for summary judgment. Dkt. No. 57. In response, the plaintiff filed a motion which the clerk's office docketed as a motion for leave to file oversized memorandum, a motion for extension of time to reply, and a motion for temporary restraining order. Dkt. No. 72. In this motion, the plaintiff asked the court to give him an eighty-day extension of time to respond to the defendants' motion for summary

20

judgment. Id. at 1. He asked to file an "oversized" response and memorandum, but does not explain how many pages he is seeking to file. Id. He asked for these forms of relief in the alternative—either the extension of time or the extension of the brief size. The plaintiff argues that he needs the extension of time to allow "orders to be issued in this case and the cases of 14cv452, 14cv792, 14cv1594." Id. He argues that "discovery has not been court ordered in cases of 14cv452 or 14cv792," and that he needs the discovery in those cases before he can respond to the summary judgment motion in this case. Id. at 2. He further states that he sent discovery demands and releases to the Racine County Jail and its counsel, but has received no responses since November of 2015. Id. He argues that he's filed several motions in this case, particularly a motion to appoint counsel, and that he needs rulings on these motions before moving ahead. Id. Finally, he argues that he has a broken hand which makes it very hard for him to write, that he is not being given his psychotropic medications, and that the inmate who was helping him file his documents was being transferred to another prison. Id.

The plaintiff also asks the court to issue a temporary restraining order requiring the staff at Columbia Correctional Institution to grant him law library time, and to give him a wheelchair for the purpose of traveling to and from the library. Id. at 1.

As to the plaintiff's request for an eighty-day extension of time: the plaintiff asks for the extension in *this* case. The fact that he has several other cases pending, and that discovery has or hasn't been received, or motions have

or have not been ruled on, in *those* cases is not a reason to delay the proceedings in *this* case. The court is, by this order, ruling on pending motions in this case (including the motion to appoint counsel), so after the plaintiff receives this order he will have those rulings. The fact that the plaintiff still awaits some discovery in *this* case is relevant, and his difficulties with his hand are also relevant. The court will grant the plaintiff an extension of time to file his response to the defendants' motion for summary judgment, but sixty (60) days will be sufficient.

Similarly, the court will grant the plaintiff's motion for leave to file an oversized memorandum, but will impose a page limit of sixty (60) pages, which is twice as many as the thirty (30) pages as Civil Local Rule 7(f) allows.

The plaintiff must respond to the defendant's motions for summary judgment on or before **Monday, May 16, 2016**. His memorandum shall be no more than sixty (60) pages long.

As to the plaintiff's request for a temporary restraining order directing Columbia Correctional Institution staff (specifically Cynthia Newhauser and Randy Scott) to grant the plaintiff law library time and wheelchair accessibility or additional time to walk to the law library, the court notes that Columbia Correctional Institution and its staff members are not parties to this action, and the court has no jurisdiction to order them to provide the plaintiff with this injunctive relief. "[T]he general rule is that a plaintiff may not obtain injunctive relief on issues that do not relate to the claims asserted in the complaint." Alston v. City of Madison, 2014 U.S. Dist. LEXIS 106317, 2 (W.D. Wis. Aug. 4,

2014). The plaintiff can, if he chooses to do so, file claims against individuals at his current institution, but he must file a separate case to do so; the court cannot order the relief the plaintiff seeks in this case. The court will provide the warden at Columbia with a copy of this order to make the institution aware of this litigation, and the court anticipates that the institution and its staff will not obstruct the plaintiff's ability to prosecute this case.

## X.    Plaintiff's Motion to Compel Discovery (Dkt. No. 77)

In his February 22, 2016 motion to compel, the plaintiff asks the court to compel the defendants to send the plaintiff and the court documents that are needed to fully litigate this case. Dkt. No. 77 at 1. The plaintiff asked for video footage in its entirety; he says the defendants sent only clips of the video, "which is no good." Id. According to the plaintiff, the court or jury cannot get the full story of events with just the video clips the defendants chose to submit. Id. He does not describe the video footage any further—footage of what? Taken by whom?

The plaintiff also asks the court to compel the defendants to produce the personnel files for defendants Stauchie, Isaac, Gray, Keefer, and Ray. Id. He wants files pertaining to discipline of each defendant or disciplinary actions taken against them. Id. The plaintiff says he needs these documents to establish a history of abuse, excessive force, and conspiracies to cover up wrongdoing. Id. at 2.

The plaintiff's motion to compel does not comply with Federal Rule of Civil Procedure 37(a) or Civil Local 37. Those rules provide that when a party

asks the other side for discovery and the other side does not provide it, the requesting party—before filing a motion to compel—must first try to obtain the documents by meeting and conferring with the other side in good faith. Lawyers "meet and confer" by telephone or e-mail. Inmate litigants may "meet and confer" by letter. The party filing the motion to compel must attach to that motion a certification that he has met and conferred in a good-faith attempt to obtain the documents from the other side.

The plaintiff does not allege that he already has asked for these materials in discovery. If he has already asked for them, he does not allege that defendants failed to produce them. If the plaintiff has asked for the discovery, and the defendants have refused to produce it, the plaintiff needs to confer or attempt to confer with the defendants in good faith (which he can do by writing them a **polite** letter) in an effort to obtain the information without court action. The court will deny the plaintiff's motion to compel.

## XI. Conclusion

The court **DENIES** the plaintiff's motion for reconsideration. Dkt. No. 23. The court **DENIES WITHOUT PREJUDICE** the plaintiff's motions to appoint counsel. Dkt. Nos. 25, 75.

The court **GRANTS** plaintiff's motion to dismiss defendant LaShonda Gray, and **DISMISSES** LaShonda Gray as a defendant. Dkt. No. 26.

The court **DENIES** defendant Megan Keefer's motion to dismiss for failure to prosecute, and **GRANTS** defendant Megan Keefer's motion to compel the plaintiff to authorize release of records. Dkt. No. 38. The court **ORDERS** that

defendant Keefer shall provide the plaintiff with a new authorization within seven (7) days of the entry of this Order, and the plaintiff shall sign and return the authorization on or before **Monday, April 11, 2016**. If the plaintiff fails to provide executed authorizations by that date, the court **ORDERS** that defendant Keefer shall promptly notify the court in writing, and the court will consider a motion for sanctions (including the possible sanction of dismissal of the case). If the plaintiff provides the executed authorizations and Keefer obtains the plaintiff's medical records, the court **ORDERS** that Keefer shall advise the court within seven (7) days of receiving the records whether she wishes to supplement her motion for summary judgment.

The court **DENIES** the plaintiff's motion for partial summary judgment. Dkt. No. 45. The court **DENIES** the plaintiff's motion for approved court settlement proposal. Dkt. No. 45. The court **DENIES** the plaintiff's motion for court order to obtain video. Dkt. No. 45.

The court **DENIES** the plaintiff's motion for court order. Dkt. No. 46. The court **ASKS** that along with this order, the clerk send the plaintiff a copy of Docket No. 41-1. The clerk shall not send a copy of that document to the defendant.

The court **DENIES AS MOOT** the plaintiff's motion for court ruling. Dkt. No. 47.

The court **DENIES** the plaintiff's motion to strike defendant Megan Keefer's summary judgment motion. Dkt. No. 53.

The court **GRANTS** the plaintiff's motion for leave to file an oversized memorandum, and **ORDERS** that he may file a memorandum no longer than sixty (60) pages in length. The court **GRANTS** the plaintiff's motion for extension of time to file a response to the motion for summary judgment, and **ORDERS** that his response is due no later than **sixty (60)** days from the date of this order, or by **Monday, May 16, 2016**. Dkt. No. 72. The court **DENIES** the plaintiff's motion for a temporary restraining order. Dkt. No. 72.

The court **DENIES** the plaintiff's motion to compel discovery. Dkt. No. 77.

The court will send a copy of this order to the Warden at Columbia Correctional Institution.

Dated in Milwaukee, Wisconsin this 14th day of March, 2016.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge